## CONSTRUCTION OF WILL.

[Circuit Court of Trumbull County.]

### C. W. OWSLEY v. THOMAS PRICE ET AL.

Decided, October Term, 1903.

*Wills—Election of Widow to Take Under the Will of Her Husband.*

Testator at the time of the execution of his will and at his death, was the owner of the undivided nineteen twenty-eighths of fifty-one and one-half acres of land, and his wife was the owner of the other undivided nine twenty-eighths thereof, they having obtained title by deed executed to them jointly, the property constituting their homestead. He was also the sole owner of two other small parcels of land. His will provided that his widow should have a life estate in all of his real property, and at her death it was to be sold and the proceeds divided as directed in the will. The widow elected in the probate court to take under the will. *Held:* That the widow did not, by such election, waive her right to the fee in the nine twenty-eighths of the fifty-one and one-half acres; that she had a legal right to devise the same and that such devise would be upheld. *Hibbs* v. *Insurance Co.*, 40 O. S., 543, distinguished.

COOK, J.; LAUBIE, J., concurs; BURROWS, J., dissents.

Appeal from the Court of Common Pleas of Trumbull County.

This is an action for partition of real estate and comes into this court on appeal.

The question involved is the construction of the will of Thomas Price and the effect of an election by Mary L. Price, his widow, in the probate court, to take under the will.

At the time of making the will, and also at the death of Thomas Price, he and his wife were the joint owners of fifty-one and one-half (51 1-2) acres of land in Trumbull county, he being the owner of nineteen twenty-eighths, and she nine twenty-eighths. These premises were their homestead, and they had jointly occupied it as such for a number of years, it being an ordinary small farm. They obtained title through a joint deed executed to them. Thomas Price at the same time was also the sole owner of two small tracts of land, one containing one acre and the other one-fourth of an acre.

His will provided as follows:

"Item 3d.   I give and devise all my real property which I do now .possess, or may possess at the time of my death, containing at the present time the homestead of fifty-one and one-half acres, more or less, recorded in Trumbull County Records, Vol. 105, page 36, and Vol. 139, pages 6 and 7; also as recorded in County Records, Vol. 142, page 26, containing one acre of land; also as recorded in County Records, Vol. 147, page 336, containing one-fourth of an acre of land, to my beloved wife, Mary Louise Price, during her natural life, not to be sold nor exchanged by her.   Then after her death one year, it is my wish that my executor hereinafter named shall cause all of the said property, my real property as above mentioned, also any other that I may possess at the time of my death, to be sold as he may see fit and the proceeds to be by him, my executor, equally divided between the eight following named persons."

The widow, Mary L. Price, on being cited to appear in the probate court, to elect whether or not she would take under the will, elected in court to take under the will.

The widow, Mary L. Price, after such election, made a will by which she devised·her nine twenty-eighths interest, or undivided part, of said fifty-one and one-half acre tract to Mary Jane Owsley and her husband, C. H. Owsley, as she expressed it in the will, "as a reward for kindness and care that they have extended to me in years past, asking them that at my death they will see that I have suitable burial by the side of my deceased husband, Thomas Price."

C. H. Owsley succeeded to all the rights of Mary Jane Owsley in said premises under such will, if she had any.   The Owsleys were not included in the eight beneficiaries named by Thomas Price in his will.

It is claimed that this case is ruled by *Hibbs* v. *Insurance Company,* 40 O. S. R., 543.   We do not think so.   In that case the provision of the will was "I give and devise to my wife in lieu of dower the farm on which we now reside, containing about two hundred acres, during her natural life."   Also, the will gave her a large amount of stock on the farm, bank stock, etc., and the clause concluded with the words, "At the death of my said wife, the real estate aforesaid, I give, devise and

bequeath to my grandson, William Miller.'' Eighty acres af the two hundred had come to the wife by descent; was her sole property and had been so incorporated with the farm for many years as to entirely lose its identity as a separate tract. The widow elected to take under the will, and the court held by so doing she relinquished her fee in the eighty acres under the doctrine as stated in the case:

''That if a testator has effected to dispose of property which is not his own, and has given a benefit to the person to whom that property belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition; but if, on the contrary, he chooses to enforce his proprietary rights against the testator's disposition, equity will sequester the property given to him, for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of those rights.''

And, again:

''It is a well settled principle of equity that where a will assumes to give to one of its beneficiaries property belonging to another person for whom provision is likewise made in the will, the latter is bound to elect whether he will claim the property so disposed of or take the provision made for him in the will, and that he can not have both.''

While there is no question but what this is the general doctrine as stated in the authorities; yet they all agree that the rule is a harsh one, and in *Church* v. *Church, Executor, et al*, 57 O. S. Rep., 561, it is said:

''But it is also well settled that the language of the will is expressive of the intent to give another's property must be unequivocal.''

If the provision in question, taken in connection with the whole will, will reasonably admit a construction not involving a disposition of such property, that construction must prevail. In order to create the necessity for an election, there must appear on the face of the will itself a clear, unmistakable intention on the part of the testator to dispose of property, which is in fact not his own. The language must be so clear as to leave

no doubt as to the testator's design, as in the Hibbs case where the testator gave to the wife in unequivocal words the whole farm, "the farm on which we now reside," and which was at his death to go to the grandson. The necessity for an election can not arise from an uncertain or dubious interpretation of the will.

In *Church* v. *Church, supra,* the testator held a number of insurance policies upon his life. Two of them were payable to his wife upon his death, she being named as beneficiary, while several others were payable to him or his estate. The language of the will was: "I direct that my executor collect and realize on all my life insurance policies which I hold on my life and distribute the proceeds in accordance with the terms of my will and codicil." The will and codicil provided that the wife was to receive during her life one hundred dollars per month, so long as her two daughters remained unmarried, and then seventy dollars per month, and also to have the use of residence free of taxes and assessments during her life, and in addition thereto one thousand dollars in cash upon his decease. The court held that, although all the policies of insurance were in the possession of the testator at the time he made his will and up to his death, yet it could not be said that he intended to bequeath the two policies in which his wife was named beneficiary, and although she elected to take under the will in the probate court, and persisted in her election, yet the proceeds of the two policies should go to her.

Spear, Judge, in the opinion, says:

"The subject-matter is his policies—*my* policies, is the phrase. The words following 'which I hold' would, in common parlance, signify manual possession, but the expression is subordinate to that which precedes, and, taken in connection with it, implies possession of that which was his. Nor is the result different if a technical legal meaning is given the word 'hold.' Indeed, it signifies tenure. But tenure can not exist in favor of one respecting that in which he has no property interest. If the question were as to a devise of land in this form: 'All my land of which I have possession,' would any intelligent mind assume that the will evinced a purpose to convey land of another which might at that time happen to be in

the possession of the testator? Surely not. The canons of construction will not permit a provision clearly disposing only of property in the possession of the testator of which he is the owner to be held to include property in his possession which belongs to another."

Again, he says:

"The case at bar is dissimilar from *Hibbs* v. *Insurance Company,* 40 O. S., 543, relied upon in argument, in this important particular. There the description of the property of the wife was clearly defined, and it was clearly included in the devise; here it is only not clearly included, but is, as we think, clearly excluded by the terms of the codicil."

In the case under consideration the property was an undivided interest in land. The husband's possession would also be the wife's possession. The provision of the will is:

"I give and bequeath all my real property which I do now possess or may possess at the time of my death to my beloved wife, Mary Louise Price, during her natural life, not to be sold nor exchanged by her; then after her death one year, it is my wish that my executor hereinafter named shall cause all of the said property, my real property, as above mentioned, also any other that I may possess at the time of my death, to be sold as he may see fit, and the proceeds to be by him, my executor, equally divided betwen the eight following named persons."

The testator, it seems to us, took special pains only to include his own property. The provision is "my real property which I possess or may possess at my death." Then again his executor is ordered to sell all of the said property, *my real property,* not his wife's real property, but *his own real property,* which he possessed of which he had the tenure.

In construing wills there is one rule applicable to all wills alike, and that is, that the meaning and intention of the testator is to be ascertained from the language of the will itself, so that but little aid is given in one case by the construction adopted in another.

In order, therefore, to make this case on all fours with *Hibbs* v. *Insurance Company,* it would be necessary to exclude from consideration the words "my real property which I do now

possess or may possess at the time of my death," and to reject the inference connected therewith from the reference to the recorded deed of the farm in question, which shows that his real property consisted only of an undivided interest therein. Indeed, not a shadow of resemblance could be made between that case and this, were it not for the words "Containing at the present time the homestead of fifty-one and one-half acres, more or less." These words, however, are themselves equivocal, and taken in connection with the other words of the sentence, "I give and devise all *my* real property which *I* do now *possess*," they are made still more equivocal, and the only consistent interpretation that can be put upon them is that the testator meant and intended to say "contained in the homestead," instead of "containing" the homestead. At all events, it isimpossible to say that the testator clearly intended to devise to his wife her property—property he did not possess as his own—in using the words of description contained in this item. In one sense he was in possession of his wife's share of the farm; that is, as tenant in common, but the words "which I do now possess or may possess at the time of my death," does not, and can not, be held to refer to and include property thus held, because the testator himself limits their application to property owned solely by himself: "I give and devise all *my real property* which I do now possess;" and "my executor hereinafter named. shall cause *all* of the said property, *my real property above mentioned*," to be sold.

This intent, so unequivocally expressed by these words, to include in the devise only that part of the real property which he himself owned, should be the controlling factor in the interpretation of this will.

In the case of *William Melick and wife* v. *Abram Darling,* 11 Ohio Rep., 343, the syllabus of the case is:

"To create a case of election there must be a plurality of gifts or rights, with an intention expressed or implied, of the party who has a right to control one or both, that one should be a substitute for the other."

It is true that at that time the syllabus was not necessarily the law of the case, but Wood, J., on page 350 of the opinion in the opening sentence, uses the same language.

That was a case in which the testator and the devisee were tenants in common. The language of the will was: "I also give to my grandson, Jeremiah Beatty, the southwest quarter of section seven in township five and range ten." In the same will provision was made for Abram Darling. The testator and Abram Darling were tenants in common of the southwest quarter of section seven in township ten devised to Jeremiah Beatty, the patent having been issued to both of them. The court held that it was not the intention of the testator to devise both interests, and that Abram Darling was not required to surrender his moiety in order to retain the property devised and bequeathed to him by the will.

In *Rancliffe* v. *Parkyns*, 6 Dow, 185, cited in note to *Dillon* v. *Parker*, 1 Swanston Rep., 394, Lord Eldon said that "It is difficult to apply the doctrine of election where the testator has some present interest in the estate disposed of, though not entirely his own."

In *French* v. *Davies*, 2 Ver. Jr., 578, it is said:

"Before you can prevent the legal right, the intention must be perfectly clear. The intention must be so clear that a judge can say it is impossible the testator could mean the defendant to have both."

Decree for plaintiff, ordering partition of premises as prayed for.

Burrows, J., dissents.

*Owsley & Gillmer*, for plaintiff.

*Arrel, McVey & Taylor, H. A. Zimmerman* and *Smiley & Weiss*, for defendants.


BURROWS, J.

I am not able to concur in the conclusion reached by the majority of the court.

If it clearly appears from the will that the testator, Thomas Price, intended and assumed, in the devise of the homestead,

to dispose of the interest of his wife therein, then the petition of plaintiff should be dismissed.

It is not suggested that the election of his widow, Mary L. Price, to take under the will was not duly and understandingly made or that the plaintiff stands on any higher or better ground than did Mary L. Price. Hence, the contention is necessarily limited to the question whether, by the terms of this will, Thomas Price made a disposition of the entire homestead, consisting of fifty-one and one-half acres.

It is held by the majority of the court that a doubt may be entertained as to the meaning of the language: "I give and devise all my real property which I do now possess or may possess at the time of my death, containing at the present time the homestead of fifty-one and one-half acres, more or less, recorded," etc., and that this language is consistent with an intention to devise only a two-thirds undivided interest therein, although the testator was and for many years had been, presumably in possession of the whole as the family homestead.

It must be conceded that apt and unequivocal language is employed to designate and describe the entire homestead lot as included in the devise. Had the wife been sole owner of it instead of part owner, no question or doubt would exist as to the intention of the testator to make disposition of the lot and the whole of it.

It is said that the use of the words "my real property," containing the homestead, etc., indicates an intention to dispose only of such interest as testator had in the fifty-one and one-half acres. It will be observed, however, that the same phrase is also applicable to the one-acre lot and the one-half acre lot of which he was sole owner, and which is also devised in the same item to his wife.

When we consider the evident object and purpose of the testator in making this will, all doubts as to the meaning of the alleged ambiguous words and phrases are dispelled. The testator gave his wife a life estate in all real property which he then had or which he might thereafter acquire including the fifty-one and one-half acres constituting the homestead, upon

the express limitation that none of it was to be sold or exchanged by her during her life time and that then after her death one year, all of "said property" was to be sold by his executor and the proceeds equally divided between the persons who were the natural objects of their mutual bounty.

No language could have been used to express more clearly the purpose of the testator to keep all of said real estate, including the homestead, intact, and undisposed of during the life of his wife and upon her death to have it sold and the proceeds of the entire property equally divided between his children named in the will. The intention and attempt of the testator to make a complete and final disposition not only of his own interest in the real estate described, but of the interest of his wife in the homestead is, I think, clearly and unequivocally expressed. In this state the rule of decision applicable to the facts in such case is not open to dispute. The case of *Hibbs* v. *Insurance Co.*, 40 O. S., 543, is substantially a duplicate of the case at bar in all essential particulars; and the reasoning and citation of authorities in that case conclusively settle all controverted questions in this case. It is said that the case at bar may be distinguished from the Hibbs case in respect to the character of the interest of the wives in the homesteads, and in the amount devised in lieu of such interests respectively. In the case under consideration, the wife held a joint interest with her husband, while in the Hibbs case she held separate title in fee to 80 acres of the tract constituting the homestead, and in both cases the whole tract must pass, if at all, under the general designation "the homestead." In the Hibbs case some importance is attached to the circumstance that the land of the wife was so situated and occupied that a "careful survey" would be necessary to determine and mark the boundary between the lands of the husband and wife; and the inference is apparently drawn from this circumstance that there could be no just inference of intention on the part of the testator to devise under such designation only a part of the whole tract that constituted the homestead. If an obliteration or removal of the lines of de-

markation are important upon the question of intention, then surely the impossibility of making any lines of demarkation, as in the case at bar, must be equally important. As to the other alleged distinguishing particular between the cases under consideration little need be said. That more ample provision was made for the wife in lieu of her interest in the homestead in the Hibbs case can not change the rule of decision; besides it is not apparent from the record that there was any disparity in this respect. In the case at bar the testator gave his wife a life estate in two other lots, the value of the use of which may have far exceeded her interest as widow in the estate of her husband and the value of her interest in the homestead. In respect to these two particulars and these alone, attempt is made to distinguish the case at bar from the Hibbs case; and I am compelled to say that in my opinion the authority of the Hibbs case has been ignored rather than distinguished in the decision of this case.

The conclusion reached by the majority of the court is avowedly placed upon the later case of *Church* v. *Church,* 57 O. S., 561. In that case the court found that it affirmatively appeared that the testator did not intend to dispose of the certificate made payable to his wife, and that under the circumstances the language of the will was only applicable to other certificates held by the testator. The learned judge in his opinion approves of the decision of the Hibbs case in respect to its conclusions of fact as well as law, and points out the dissimilarity between the cases.

The case of *Melick* v. *Darling,* 11 Ohio, 343, is also cited by plaintiff in support of his contention. The correctness of the decision in the Melick case may be doubted since it was made by a divided court. Judge Wood, who gave the opinion, said "the case is not so clear that he who runs may read." But, if correctly decided, it is an authority for the defendant rather than the plaintiff. The decision is not placed on a want of clearness in the language by which the southwest quarter of section seven is devised to Jeremiah Beatty, nor on the fact that the testator held this quarter section as tenant in common

with another, but solely on the ground that the "general design" of the testator as evinced by the whole will, was to make an equal distribution of his property to each class of heirs. The two grandsons, William and Jeremiah Beatty, each were given a quarter section of land; but to William he gave an undivided half, while to Jeremiah he gave a quarter section in which he also held an undivided half interest. To give one double what he gave the other was in conflict with the general scheme of the will; and therefore, a majority of the court was of the opinion that it was not clear that he intended to dispose of the interest of his co-tenant in the quarter section devised to Jeremiah.

In the case at bar the general scheme and design of the will is in accord with the terms of the devise by which the entire homestead is disposed of, and is not consistent with any other interpretation.

The suggestion of counsel in their brief in the Melick case that the doctrine of election should not be applied where the testator has some interest in the property devised, was not noticed by the court in the decision of that case, and has no support from any decision in this state.

Finally it is said that the doctrine of election in such cases is a harsh one. It would in my judgment be a more harsh and unjust doctrine to hold that a devisee to whom a gift has been made on condition that he surrenders certain of his own property to the disposition of the devisor should be allowed to receive the gift and repudiate the condition.